# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

### CIVIL CASE NO. 1:08cv09
### [Criminal Case No. 1:04cr43-4]

| | | |
|---|---|---|
| ANGELA HOWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF DECISION** |
| | ) | **AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1], the Government's Motion for Summary Judgment [Doc. 7], and the Petitioner's Motion to Supplement U.S.C. §2255 Petition to Include Recency pursuant to 4A1.1(e) [Doc. 13].

## PROCEDURAL HISTORY

On April 5, 2004, the Petitioner and ten co-defendants were charged in a two count bill of indictment with conspiracy to manufacture and possess with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine and conspiracy to possess pseudoephedrine, acetone and iodine with intent to manufacture more than

50 grams of methamphetamine, in violation of 21 U.S.C. §§841(a)(1) & 846. [Criminal Case No.1:04cr43-4, Doc. 3]. On October 15, 2004, the Petitioner entered into a Plea Agreement with the Government pursuant to which she agreed to plead guilty to Count One. [Id., Doc. 98]. In the Agreement, the Petitioner and the Government agreed to recommend to the Court that the amount of actual methamphetamine involved in the conspiracy which was known to or reasonably foreseeable to her was at least 50 grams but less than 150 grams. [Id., at ¶2]. The agreement contained a disclosure that the statutory minimum and maximum terms to which the Petitioner could be sentenced were not less than 10 years or more than life imprisonment. [Id., at ¶5].

The Petitioner attended a Rule 11 hearing on October 25, 2004, at which time she was placed under oath and participated in a lengthy colloquy with the Magistrate Judge to ensure that she was intelligently and freely entering her guilty plea. [Id., Doc. 110]. During that colloquy, the Petitioner told the Court that she had discussed the charge and corresponding penalties with counsel, she understood those matters, she had taken ample time to discuss possible defenses with counsel, her attorney had discussed how the United States Sentencing Guidelines (U.S.S.G.) applied in her case, she understood the rights that she was relinquishing by virtue of her guilty plea,

she understood and agreed to the terms of the agreement, she was satisfied with the services of her attorney, and she was tendering her guilty plea because she, in fact, was guilty of the offense. [Id., Doc. 110]. Based on the colloquy and the Petitioner's answers, the Court concluded that her guilty plea should be accepted. [Id., at 8-9]. On May 10, 2005, the Petitioner was sentenced to 151 months imprisonment.[1] [Id., Doc. 171].

The Petitioner timely appealed her case to the United States Fourth Circuit Court of Appeals, arguing that trial counsel was ineffective for having failed to challenge a three-point enhancement imposed pursuant to U.S.S.G. §2D1.1(b)(6)(B) due to a substantial risk of harm to human life and/or the environment. United States v. Howell, 201 Fed.Appx. 948, 949 (4th Cir. 2006), certiorari denied 549 U.S. 1236, 127 S.Ct. 1317, 167 L.Ed.2d 127 (2007). The Circuit held:

> [T]he presentence report included the information that Howell had participated in the manufacturing of methamphetamine at three residences and a list of the items and substances seized from each of the residences. A partial list of these included: automobile brake part cleaner/degreaser containing acetone and toluene; Heet automobile gas line antifreeze/de-icer; hydrogen peroxide; a gallon of methylethyl ketone; camp fuel; boxes of matches; large numbers of allergy tablets; fifty-nine ounces of iodine; two eighteen-ounce containers of lye; a gallon of muriatic acid; and red phosphorous. Howell and Barry McCoyle, a co-

---

[1]The Petitioner was sentenced by Judge Thornburg who has since retired. Her case has been reassigned to the undersigned.

3

conspirator who manufactured methamphetamine with Howell, gave statements after their arrest. McCoyle stated that, after methamphetamine was manufactured, the leftover liquids were usually poured down the washing machine drain and the rest of the trash was taken to the dump. He said that, on one occasion in 2002, when he and co-conspirator Andy Coleman made methamphetamine, the trash was burned in the back yard. Howell stated that, on another occasion when Coleman made methamphetamine at McCoyle's parents' home, the waste materials were poured out next to the driveway.

The dangers of methamphetamine laboratories to human life are well-documented. Moreover, the record in Howell's case established that the conspirators released hazardous materials into the environment. Consequently we cannot say that the record conclusively demonstrates that Howell's attorney was ineffective in failing to challenge the enhancement under §2D1.1(b)(6)(B).

Id. The Petitioner's conviction and sentence were affirmed. Id.

On January 3, 2008, the Petitioner timely filed this motion to vacate.[2] In support of the motion, the Petitioner raises the following claims of ineffective assistance of counsel: (1) failure to investigate and challenge the quantities and types of methamphetamine (actual versus mixture); (2) failure to object to the inclusion of her personal use quantity of methamphetamine in the final drug quantity; and (3) failure to move for a downward departure on

---

[2]The Petitioner's conviction became final for purposes of triggering the one-year limitations period applicable to §2255 when the petition for a writ of *certiorari* in the Supreme Court was denied on February 4, 2007. Clay v. United States, 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) ("Finality attaches ... when this Court affirms a conviction on the merits on direct review or denied a petition for a writ of *certiorari*, or when the time for filing a *certiorari* petition expires.").

the basis of sexual abuse that she suffered as a child and due to the need for her to care for her brother.

On November 15, 2010, the Petitioner filed a motion to supplement in order to add a claim for relief pursuant to U.S.S.G. Amendment 742. [Doc. 13].

## STANDARD OF REVIEW

At the time the pending motion for summary judgment was filed, Federal Rule of Civil Procedure 56 provided in pertinent part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (2008).[3]

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[3]Rule 56 was amended effective December 1, 2010. The substance of the standard as it applies to this case was not changed by the amendment.

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), *certiorari denied* 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue[.]" Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id.

## DISCUSSION

The Supreme Court has stated the test for determining whether a defendant received adequate assistance of counsel.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. <u>Id.</u> Thus, a defendant must show counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability that a reasonable defendant in the petitioner's situation would not have pleaded guilty but would have insisted on going to trial. <u>Id.</u>, at 688; <u>Bustos v. White</u>, 521 F.3d 321 (4th Cir. 2008) (applying <u>Strickland</u> standard to defendant who entered plea agreement) (citations omitted). When there is an allegation that counsel was ineffective at sentencing, a petitioner must show that his "sentence would have been more lenient absent counsel's errors." <u>Royal v. Taylor</u>, 188 F.3d 239, 248-49 (4th Cir. 1999), *certiorari denied* 528 U.S. 1000, 120 S.Ct. 465, 145 L.Ed.2d 379 (1999).

In reviewing claims of ineffective assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689. Indeed, the Court must make "every effort . . . to eliminate the distorting effects of hindsight," operating, instead with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>. A petitioner bears the burden of proving <u>Strickland</u> prejudice

7

and if he fails to do so "a reviewing court need not consider the performance prong." Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992), *certiorari denied* 506 U.S. 885, 113 S.Ct. 243, 121 L.Ed.2d 176 (1992).

The Petitioner's first complaint is that her attorney failed to investigate properly and challenge the amount and type of methamphetamine for which she was held responsible. Although she pled guilty to Count One, which charged conspiracy to manufacture with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine, the Petitioner agreed in the plea agreement to recommend the conspiracy's involvement with at least 50 grams but less than 150 grams of actual methamphetamine. In allowing her to do so, the Petitioner claims her attorney rendered ineffective assistance.

As noted, the indictment charged in Count One that the Petitioner conspired to manufacture and to possess with intent to distribute at least 500 grams of methamphetamine mixture.[4] That quantity of methamphetamine mixture subjected the Petitioner to a statutory mandatory minimum sentence of ten years imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii) (2004). The same statute provides for a mandatory minimum sentence of ten years

---

[4]Count Two charged her with conspiracy to possess precursors with intent to manufacture more than 50 grams of actual methamphetamine.

imprisonment for a conspiracy involving 50 grams of more of actual methamphetamine. 21 U.S.C. § 841(b)(1)(A)(viii) (2004). In other words, whether the Petitioner was attributed with the charged quantity of a methamphetamine mixture or the quantity of the actual methamphetamine as set out in the plea agreement, she faced the same statutory minimum sentence of ten years. As noted in the plea agreement, regardless of the parties' recommendation to the Court concerning drug quantities, any statutory minimum sentence must be applied.

The Sentencing Guidelines in effect at the time of the Petitioner's sentence prescribed the same offense level to 500 grams of methamphetamine mixture as to 50 grams of actual methamphetamine. U.S.S.G. § 2D1.1(4) (2004) (conviction involving at least 500 grams but less than 1.5 kilograms of methamphetamine mixture yields offense level 32; conviction involving at least 50 grams but less than 150 grams of actual methamphetamine yields offense level 32). Therefore, the Petitioner's guilty plea and acknowledgment of involvement with at least 50 grams but less than 150 grams of actual methamphetamine did not expose her to a higher sentence than she would have faced for pleading guilty to Count One which charged her with responsibility for 500 grams of methamphetamine mixture. Id.

The Fourth Circuit noted, in ruling on the Petitioner's appeal, that she admitted to authorities after her arrest that she had been involved with the conspiracy which manufactured methamphetamine at three different residences. Howell, 201 Fed.Appx. at 949. During her Rule 11 hearing and again at sentencing, the Petitioner acknowledged that her presentence report provided a factual basis for her guilty plea. United States v. Randall, 171 F.3d 195, 211 (4th Cir. 1999) (where court relies on information in presentence report, defendant bears burden of establishing information is incorrect; objections are insufficient). The report contains references to numerous individuals who told authorities they had purchased methamphetamine, both actual and mixture, from the Petitioner and her co-conspirator McCoyle. [Criminal Case No. 1:04cr43, Doc. 314]. James Morgan told the authorities that he purchased 3.5 grams of actual methamphetamine from the Petitioner and McCoyle about three times per week for five months in 2001. [Id., at 7-8]. Based on this information alone, the Petitioner's sentencing calculations would have included at least 54.9 grams of actual methamphetamine thus exposing her to the mandatory minimum sentence of ten years.

During a search of the Petitioner's home on August 4, 2004, authorities discovered containers holding a total of 990 grams of methamphetamine mixture, a container holding 1.7 grams of actual methamphetamine, and

precursor materials which would have yielded another 4.7 grams of actual methamphetamine. [Id., at 9-10]. Based on this information, additional grams of actual methamphetamine could have been included in the Petitioner's offense level calculation. Moreover, the 990 grams of methamphetamine mixture found during that search was alone sufficient to trigger the mandatory minimum sentence of ten years.

The evidence of drug quantities with which the conspiracy was involved far surpassed the amount to which the Petitioner pled guilty. [Criminal Case No. 1:04cr43, Doc. 314, at 10]. Indeed, the probation officer noted that her "accountability would have been greater" but nonetheless used the quantity to which the parties stipulated in the plea agreement. [Id.]. As a result of the negotiation by the Petitioner's attorney of the quantities contained within the plea agreement, the Petitioner's guideline range decreased from 188 to 235 months (Offense Level 34/Criminal History Category III) to 151 to 188 months (Offense Level 32/Criminal History Category III). As a result, the Petitioner has not shown that counsel rendered ineffective assistance or that she was in any manner prejudiced as a result of the drug quantities contained within the plea agreement. Moreover, in view of the larger quantities attributable to the conspiracy, the Petitioner cannot show that a reasonable defendant in her situation would have insisted on going to trial or that she would have received

a lower sentence had counsel challenged the drug calculations.

The Petitioner's next assignment of error is that her attorney should have sought the exclusion of the amounts of methamphetamine which she used to sustain her addiction. The Petitioner, however, has not advised what quantity should be attributed to personal use and the sentencing Court in any event would not have been obligated to accept that amount. United States v. Johnson, 63 Fed.Appx. 152 (4th Cir. 2003) (noting sentencing court did not err in declining to reduce the quantity of heroin attributable to defendant based on his assertion that half of the heroin he possessed was for his personal use).

Moreover, U.S.S.G. §1B1.3(a)(2) provides that the sentencing court is to take into consideration only that conduct "which was part of the same course of conduct or common scheme or plan as the offense of conviction." The offense of conviction here is a conspiracy to manufacture with intent to possess and distribute methamphetamine. Manufacturing methamphetamine for personal use was part of the same course of conduct as the offense of conviction; conspiracy. United States v. Pauley, 289 F.3d 254, 261 (4th Cir. 2002), *opinion modified on other grounds* 304 F.3d 335 (4th Cir. 2002), *certiorari denied* 537 U.S. 1178, 123 S.Ct. 1007, 154 L.Ed.2d 925 (2003) ("We need not decide today whether drugs possessed for personal use should be

considered relevant conduct in sentencing for possession with intent to distribute because the district court's finding that Pauley possessed the entire quantity with intent to distribute was not clearly erroneous.").

> Though not yet addressed in the Fourth Circuit, many other Circuit Courts of Appeals [that] have addressed this issue concluded that "when a defendant is convicted of drug distribution, ordinarily a district court should exclude from the total drug quantity any amount possessed for his personal consumption." ... The Court believes that [this] distinction does not make a difference when Defendant is a member of a drug conspiracy. While "[p]urchases by an addict or casual user for personal use may not automatically make one a member of a conspiracy to distribute," when the evidence establishes that there is a conspiracy in which the Defendant is a member, then the "[D]efendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy."

United States v. George, 2010 WL 1779961 **2 (E.D.Va. 2010), *quoting* United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993), *certiorari denied* 510 U.S. 112-, 114 S.Ct. 1073, 127 L.Ed.2d 391 (1994) (other citations omitted); *accord*, United States v. Iglesias, 535 F.3d 150, 160 (3rd Cir. 2008), *certiorari denied* 129 S.Ct. 2813, 174 L.Ed.2d 307 (2009) ("Nothing in the Guidelines suggests that drugs a defendant earmarks for his personal use should be deducted from the total quantity involved in a conspiracy" and noting every circuit to address the issue has held the entire quantity handled is relevant conduct); United States v. Fraser, 243 F.3d 473, 474-75 (8th Cir. 2001); United States v. Page, 232 F.3d 536, 542 (6th Cir. 2000), *certiorari*

*denied* 532 U.S. 1056, 121 S.Ct. 2202, 149 L.Ed.2d 1032 (2001); <u>United States v. Asch</u>, 207 F.3d 1238, 1243-44 (10th Cir. 2000); <u>United States v. Antonietti</u>, 86 F.3d 206, 209-10 (11th Cir. 1996).

The Petitioner does not dispute the overwhelming evidence of her involvement in this conspiracy. [Criminal Case No. 1:04cr43, Doc. 314, at 9 (in 2004 four confidential informants advised authorities of her continued methamphetamine-making, describing her as an experienced methamphetamine cook who had taught numerous people how to make the drug and that she made it on nearly a daily basis)]. Indeed, the Petitioner pled guilty to that involvement. Her attorney did not provide ineffective assistance by failing to seek the exclusion of methamphetamine manufactured or possessed within the context of the conspiracy for her personal use.

The Petitioner's last claim is that her attorney should have sought a downward departure based on her sexual abuse as a child and her brother's illness.

The Petitioner states that the abuse she suffered as a child by her uncle caused her to use drugs to escape her depression and panic attacks. U.S.S.G. §5H1.3 provides that a defendant's mental and emotional conditions are not ordinarily relevant in determining whether a departure is warranted. The Petitioner's history of sexual abuse and her depression and anxiety

disorders do not rise to the level required for an exception to this general principle.

> [I]n order to qualify for a departure under [§5H1.3] a defendant must be suffering from something greater than "emotional problems" or "hardship."  A defendant must also demonstrate that his or her "significantly reduced mental capacity" bears a causal relationship to the crime.  This causal connection must consist of more than an emotional weakness that leaves one open to suggestion.  Rather, in order to qualify for a diminished capacity departure, a defendant must show an inability "to process information or to reason."

United States v. Withers, 100 F.3d 1142, 1147-48 (4th Cir. 1996), *certiorari denied* 510 U.S. 1132, 117 S.Ct. 1282, 137 L.Ed.2d 358 (1997).

Here, the Petitioner's evidence shows nothing more than depression and anxiety attacks. [Criminal Case No. 1:04cr43, Doc. 314, at 17].  Her voluntary use of methamphetamine precludes any such departure.  Withers, supra., *citing* U.S.S.G. §5K2.13.  Moreover, the evidence shows that she was fully capable of participating in a long-term and wide-ranging conspiracy pursuant to which she manufactured methamphetamine.  Id.  There is no evidence that her mental and emotional conditions rendered her unable to reason or process information.  Id.; *accord*, United States v. Dyches, 257 Fed.Appx. 694 (4th Cir. 2007); United States v. DeBeir, 186 F.3d 561, 569 (4th Cir. 1999) ("Except under truly extraordinary circumstances, prisons exist for those who commit crimes, not just for tough criminals").  Thus, because the

15

Petitioner cannot show that she was entitled to such a departure, her attorney was not ineffective in failing to pursue it. United States v. Dale, 11 F.3d 1160 (4th Cir. 1998).

U.S.S.G. §5H1.6 provides that family ties and responsibilities are not ordinarily relevant in determining whether a downward departure may be warranted. The Petitioner admits that her brother's condition has deteriorated during her incarceration. Indeed, there is no mention in the presentence report of any illness by a brother. [Criminal Case No. 1:04cr43, Doc. 314, at 16 (describing one half-brother ten years older than the Petitioner)]. Implicit in this is an admission that at the time of her sentencing, his condition would not have warranted such a departure. Elliott v. United States, 332 F.3d 753, 768 (4th Cir. 2003), *certiorari denied* 540 U.S. 991, 124 S.Ct. 487, 157 L.Ed.2d 388 (2003) ("a departure on the basis of family responsibilities is 'permitted only upon a finding that the defendant's family ties or responsibilities are extraordinary.'"). In what manner her attorney could have been ineffective under that circumstance is not shown.

Even if the Petitioner's brother had been as seriously ill at the time of sentencing as he is now, a departure would not have been available. In the Fourth Circuit, a downward departure based on family ties and responsibilities is a "discouraged" factor. United States v. Stone, 85 Fed. Appx. 925, 940 (4th

Cir. 2004), *certiorari denied* 542 U.S. 943, 124 S.Ct. 2922, 159 L.Ed.2d 823

(2004), *citing* Koon v. United States, 518 U.S. 81, 96, 116 S.Ct. 2035, 135

L.Ed.2d 392 (1996).

> Where a factor is discouraged, "the court should depart only if the
> factor is present to an exceptional degree or in some other way
> makes the case different from the ordinary case where the factor
> is present." [The Fourth Circuit] has previously determined that a
> departure based on family responsibilities is "permitted only upon
> a finding that the defendant's family ties or responsibilities are
> extraordinary." "Generally, a sentencing court may depart
> downward on this basis only if it finds that the defendant is
> essentially 'irreplaceable.'"

Id. (citations omitted). The Petitioner has not shown that, at the time of

sentencing, she was essentially "irreplaceable." Elliott, 332 F.3d at 769. The

exhibits submitted by the Petitioner in support of this claim actually show, to

the contrary, that her brother is currently receiving family and community

support. Id. As a result, she has not shown an exceptional circumstance. Id.;

United States v. McClatchey, 316 F.3d 1122, 1133 (10th Cir. 2003) (reversing

downward departure for defendant based on being primary caregiver for his

son because nothing in record "suggest[ed] that another individual could not

provide the necessary assistance in [defendant's] absence"); United States

v. Sweeting, 213 F.3d 95, 104 (3rd Cir. 2000), *certiorari denied* 531 U.S. 906,

121 S.Ct. 249, 148 L.Ed.2d 180 (2000) (reversing downward departure based

on defendant's responsibilities for child with Tourette's Syndrome); United

States v. Bell, 974 F.2d 537, 538 (4th Cir. 1992) (even the possible destruction of a family caused by the extended incarceration of the family's sole earner was not extraordinary); United States v. Rybicki, 96 F.3d 754, 759 (4th Cir. 1996) (illness of family members, by itself, not extraordinary).

Thus, to the extent that the Petitioner's counsel could be considered deficient for failing to move for a downward departure based on family ties and responsibilities, the Petitioner cannot establish any prejudice because Fourth Circuit case law clearly establishes that any such departure would have been unavailable and erroneous.

On November 15, 2010, the Petitioner moved to supplement her motion based on Amendment 742 to U.S.S.G. §4A1.1 which became effective on November 1, 2010. That amendment eliminates the "recency" provision from the Guidelines for a defendant who committed the offense of conviction within two years from either release from prison or while on escape from a sentence of imprisonment. U.S.S.G. Manual, Supp. To App. C (2010). Petitioner, however, received only one recency point in the computation of her criminal history. [Criminal Case No. 1:04cr43, Doc. 314, at 11]. Even if this point were to be deducted, she would still have five criminal history points, which would still leave her within Criminal History Category III, which is the category in which she was sentenced. Application of Amendment 742 would make no

difference in that sentence.

The amendment would not be available to the Petitioner in any event. Section 1B1.10 of the Guidelines provides for a sentence reduction for a defendant whose guideline range is subsequently lowered as a result of an amendment to the guidelines "listed in subsection (c)." U.S.S.G. §1B1.10(a). Thus, an amendment to the guidelines may not be applied retroactively unless it is listed in U.S.S.G. §1B1.10(c). <u>United States v. McHan</u>, 386 F.3d 620, 622 (4th Cir. 2004). The "Sentencing Commission voted to delete the 'recency' provision from the Guidelines, effective November 1, 2010." <u>United States v. Mitchell</u>, 2010 WL 4069520 **2 (2nd Cir. 2010). However, "[w]ithout an express decision by the Sentencing Commission to make its changes retroactive, the mere existence of an amendment that alters a Guideline provision going forward does not render the applicable Guideline substantively unreasonable." <u>Id</u>. "The amendment to section 4A1.1 that was effective on November 1, 2010, was Amendment 742. Amendment 742 is not listed in section 1B1.10(c)." <u>United States v. Alonso</u>, 2010 WL 4609855 **1. As a result, the amendment is not retroactive.[5]

The Court has considered the Petitioner's motion, any attached exhibits,

---

[5]The Petitioner erroneously concludes that her sentence is not final until a ruling is rendered on this pending motion. As previously noted, her sentence became final ninety days after the Fourth Circuit ruled on her appeal.

and the record of the prior proceedings.  The Court finds that the Petitioner is not entitled to relief and therefore the motion must be dismissed.  The Court further finds that the Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted).  As a result, the Court declines to issue a certificate of appealability.  Rule 11(a), <u>Rules Governing Section 2255 Proceedings for the United States District Courts</u>.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment [Doc. 7] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Petitioner's Motion to Supplement U.S.C. §2255 Petition to Include Recency pursuant to 4A1.1(e) [Doc. 13] is

hereby **DENIED** as moot.

Signed: February 28, 2011

Martin Reidinger
United States District Judge